1   Stuart R. Chandler, Esq.  (SBN 088969)
**STUART R. CHANDLER APC**
2   761 E. Locust Avenue, Suite 101
Fresno, California  93720
3   Telephone       |        (559) 431-7770
Facsimile        |        (559) 431-7778
4   Email              |        Stuart@Chandlerlaw.com
5
Attorney for Plaintiff, ANTHONY GOLDING
6
7
8                       **UNITED STATES DISTRICT COURT**
9                       **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  ISIAH MURRIETTA-GOLDING,<br>Deceased, THROUGH HIS SUCCESSOR<br>12  IN INTEREST ANTHONY GOLDING;<br>and ANTHONY GOLDING, Individually,<br>13 <br>14                       Plaintiff,<br>vs.<br>15 <br>CITY OF FRESNO, a public entity,<br>16  JERRY DYER, RAY VILLALVAZO,<br>and DOES 1 through 10, individually,<br>17  Jointly and Severally,<br>18                       Defendants. | Case Number: _____<br><br>**COMPLAINT FOR DAMAGES,<br>INJUNCTIVE AND DECLARATORY<br>RELIEF, AND DEMAND FOR JURY<br>TRIAL** |

        Plaintiff ANTHONY GOLDING, by and through his attorney, STUART R. CHANDLER,

for his Complaint against Defendants, states as follows:

                              **JURISDICTION**

        1.      This is a civil rights wrongful death/survival action arising from Defendants'

wrongful shooting, use of excessive force and other wrongful acts on April 15, 2017 resulting in the

COMPLAINT AND JURY DEMAND                                                        1

death of ISIAH MURRIETTA GOLDING, a sixteen-year-old boy, on April 18, 2017 in the CITY OF FRESNO, Fresno County, California.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide claims arising under state law.

**INTRADISTRICT ASSIGNMENT**

2.      A substantial part of the events and/or omissions complained of herein occurred in the CITY OF FRESNO, Fresno County, California, and this action is properly assigned to the Fresno Division of the United States District Court for the Eastern District of California, pursuant to Civil Local Rule 120(d).

**PARTIES AND PROCEDURE**

3.      Plaintiff ANTHONY GOLDING is the father of decedent ISIAH MURRIETTA-GOLDING.  Plaintiff ANTHONY GOLDING brings these claims individually and as a Successor in Interest for his son, ISIAH MURRIETTA-GOLDING, deceased, pursuant to C.C.P. §§ 377.60, 377.30, and federal civil rights law.  ANTHONY GOLDING is a resident of the State of California.

4.      Plaintiff ANTHONY GOLDING brings these claims individually and on behalf of Decedent ISIAH MURRIETTA-GOLDING pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death actions.  Both the wrongful death and survival claims survive the death of ISIAH MURRIETTA-GOLDING; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure § 377.62.  Plaintiff also brings his claims on the basis of 42 USC §§ 1983 and 1988, the United States Constitution, and federal civil rights law.

Plaintiff also brings these claims as Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

5.      Defendant CITY OF FRESNO is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Fresno Police Department ("FPD") which employs other defendants in this action.

6.      Defendant JERRY DYER ("DYER") at all material times was employed as Chief of Police by Defendant CITY OF FRESNO, and was acting within the course and scope of that employment.  As Chief of Police, Defendant DYER was a policy-making official for the CITY OF FRESNO with the power to make official and final policy for the Fresno Police Department. Defendant DYER is being sued in his individual capacity.

7.      Defendant RAY VILLALVAZO ("VILLALVAZO") at all material times was employed as a law enforcement officer by Defendant CITY OF FRESNO and was acting within the course and scope of that employment.  Defendant VILLALVAZO, at the time of the shooting, had over twenty years of experience as a FPD officer.  Defendant VILLALVAZO is being sued in his individual capacity.

8.      Defendant DOES 1-10 ("Doe Defendants") at all material times were employed by Defendant CITY OF FRESNO, and were acting within the course and scope of that employment. Doe Defendants are being sued in their individual capacities.

9.      Defendant CITY OF FRESNO has refused to produce or show Plaintiff or his counsel any records or videos of this incident, the City's investigations of it, or the names of involved officers other than VILLALVAZO, despite Plaintiff's repeated and lawful requests for such information.  Therefore, the true names and capacities of Defendants sued herein as DOES 1-10 ("DOE defendants") are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff will seek leave to amend this complaint to show their true names and

capacities when the same are ascertained.  Each DOE defendant was an employee/agent of the CITY OF FRESNO, and at all material times acted within the course and scope of that relationship.

10.    Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff. Further, one or more DOE defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including Doe Defendants.

11.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

12.    At all material times, each Defendant was jointly engaged in tortious activity, and had fundamental involvement and was an integral participant to the events and violations of rights described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

13.    The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, training, and procedures of the Fresno Police Department.

14.    At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

15.     Plaintiff herein timely and properly filed a government code claim pursuant to Cal. Gov. Code § 910 *et seq.*, and this action is timely filed within all applicable statutes of limitation.

16.     This Complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

## GENERAL ALLEGATIONS

17.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

18.     According to allegations made public by the FPD, the following alleged incident took place.  On April 14, 2017, four young men got into an argument with two teens at or near a pizza take-out at First & Gettysburg in Fresno, California.  The confrontation occurred at about midday.  The four young men all got into a car and drove away.  The two teens, one of whom allegedly was armed with a handgun, stood at some distance from the car.  One of these two teens allegedly fired shots from a handgun at the car as it drove southbound on North First Street, just south of Gettysburg Avenue.  According to the FPD, none of the shots struck either the driver or the three other passengers, but gunshots did hit the car.  The car crashed into a tree in the median of First Street, killing the driver, 19-year-old Eugenio Ybarra, of Fresno.  The three passengers were taken to the hospital.[1]

19.     According to FPD allegations, the next day, Saturday, April 15, 2017, FPD officers staked out a home on the 500 block of East San Bruno Avenue in Fresno where it was believed the teens lived.  One of the officers was VILLALVAZO, belonging to the FPD's "Street Violence Bureau" (SVB).  On information and belief, the SVB is a plain-clothed, tactical unit that engages in aggressive, "pro-active" policing.  These FPD-SVB officers did not try to enter the home in the 500 block of East San Bruno Avenue because they did not have an arrest or search warrant.  And

---

[1] http://www.fresnobee.com/news/local/crime/article144685709.html

because the alleged crime had occurred a day before, they could not have invoked the "hot-pursuit" exception, or any other exception, to the Fourth Amendment's warrant requirement.   On information and belief, these FPD-SVB officers only wanted to detain teens from the home to question them about the shooting in which Mr. Ybarra died.

20.     The FPD alleges the following then took place.  A car pulled up to the residence that afternoon and ISIAH MURRIETTA-GOLDING walked out of the home and got into the front passenger seat.  A short time later, the car pulled away from the East San Bruno Avenue home.  A marked patrol car of the FPD then pulled the car over in the Gallery Plaza shopping center located on the northwest corner of Shaw and Fresno Streets.  There were three teens in the car, including ISIAH MURRIETTA-GOLDING, who was riding in the right front seat.  ISIAH was a small boy, about 5'4" and 115 lbs., and visibly Latino.  The teens in the pulled-over car initially complied with the FPD officers, including to walk backwards towards the officers with their hands raised, while the FPD officers (including Doe Defendants) held them at gunpoint.  But then ISIAH took off running.  He ran north through the parking lot and then east across Fresno Street. ISIAH was unarmed. The two other teens did not flee.   At the time that ISIAH fled on foot, Defendant VILLALVAZO and DOE Defendants had no legal justification to point guns at ISIAH, and no legal justification to seize ISIAH at gun point.  ISIAH exercised his right to self-defense and to non-violently resist Defendants' attempts to unlawfully seize him.

21.     The officers began a foot pursuit of ISIAH.  Throughout this foot pursuit, ISIAH never threatened any officer or person, nor did he ever display any weapon or make any threatening gestures.  Defendant VILLALVAZO and the other officers pursuing ISIAH had no objective facts specific to ISIAH to believe that ISIAH was armed or any threat to them or anyone else.  Without legal justification or cause, the officers pursued ISIAH as he ran through the shopping center and towards the New Life Discovery Preschool at Fresno Street and Keats Avenue. The preschool's

hours are 10 a.m. to 5 p.m., Monday through Friday. Because it was a Saturday, the preschool was closed, with no one there, and the parking lot was empty. On information and belief, VILLALVAZO and the other DOE Defendants were aware that the preschool was closed, and that no one was on the preschool grounds.

22.    According to allegations made public by the FPD, ISIAH jumped a fence surrounding the preschool, and continued running towards the back of the New Life Discovery Preschool. VILLALVAZO pursued him to the fence, but did not jump over it. What happened next was all captured on video security cameras of the Day Care. Video that attorneys for ANTHONY GOLDING and ISIAH'S mother CHRISTINA PAULINE LOPEZ have repeatedly asked to see but which the CITY OF FRESNO refuses to allow them to see. Video which was the subject of a formal request made to the CITY OF FRESNO by the undersigned attorney for ANTHONY GOLDING but which the CITY refused to produce. Instead, what happened next was told to the media by DYER as follows: That ISIAH was confronted by an officer (now known to be VILLALVAZO) after ISIAH jumped the fence. It was then, according to DYER'S April 15, 2017 video recorded statement to local news media, http://abc30.com/news/officer-involved-shooting-suspect-is-wanted-for-murder-of-19-year-old-man-fresno-police-say/1878375/, that officer (VILLALVAZO) "fired one round, striking [ISIAH] in the upper body." Although DYER claims that this is all very clear on the video (that the CITY OF FRESNO keeps secret), the limited facts now known show that DYER intentionally misled the public about what happened. According to the records from an American Ambulance employee who attended to ISIAH at the scene, as well as hospital records, ISIAH was not shot in the upper body as DYER told the media. He was shot once in the back of the head. No reasonable officer would have interpreted anything ISIAH did as posing an immediate threat to anyone's safety. As any reasonable officer under these circumstances would know, Defendant VILLALVAZO's subjective fear was not objectively reasonable, because he had

no objective facts to believe that ISIAH was armed or reaching for any weapon.  Given the totality of the circumstances, no reasonable officer in the position VILLALVAZO would have an objective basis to conclude that it was likely that ISIAH presented an immediate danger of death or great bodily injury to VILLALVAZO or anyone else.

23.     Defendant DOES present during the shooting had the opportunity to intervene both verbally and physically to stop this use of excessive force by Defendant VILLALVAZO and/or others, and did not intervene.

24.     When he was shot and laying on the ground, ISIAH was in need of urgent medical care and in the custody of Defendant VILLALVAZO and DOES.  Despite the life-threatening injury ISIAH had sustained, Defendant VILLALVAZO and DOES did not provide ISIAH with any medical assistance, but rather approached him to frisk and then handcuff him as he lay, shot in the head, and obviously severely wounded on the ground.  Upon information and belief, an unreasonable amount of time elapsed before Defendant VILLALVAZO and DOES took the necessary steps to provide, request, seek, or secure first aid for ISIAH.  Also upon information and belief, about ten (10) minutes went by from the time of the shooting before paramedics arrived to take ISIAH to the hospital.  Once on scene, they assessed ISIAH at a Glascow Coma Scale of 6.  He was unconscious.  His breathing was weak and agonal.  Although he was in critical need of emergency medical care and posed zero risk of escape and zero threat to anyone, VILLALVAZO and DOE officers refused the request of ambulance personnel to remove the handcuffs.  Instead, VLLALVAZO and DOE officers told ambulance personnel that the handcuffs would be removed by FPD only after ISIAH was at the hospital.

25.     ISIAH was taken to Fresno Community Medical Center.  In route his condition worsened.  At the hospital, he and his parents CHRISTINA MURRIETTA LOPEZ and ANTHONY GOLDING, suffered for three days. ISIAH died on April 18, 2017.

26.     Defendant VILLALVAZO failed to give any warning to ISIAH before using deadly force, even though a warning would have been feasible and proper.

27.     At the time that Defendant VILLALVAZO fired a gunshot at ISIAH, the teenager did not pose a significant and immediate threat of death or serious physical injury to Defendants or to anyone else, because he was running away from Defendants, including VILLALVAZO, with his back towards them. Defendant VILLALVAZO had no facts to believe that ISIAH was armed or had any intent to harm anyone. ISIAH was unarmed. No reasonable officer would have believed that anything ISIAH might have done under the circumstances – including pulling up his pants, or allegedly moving one hand toward his pants waistband, or briefly looking back – justified the use of deadly force. Further, ISIAH was not engaged in any crime. And, ISIAH's flight from Defendants was lawful due to Defendants' unlawful precipitating acts. The use of deadly force, including Defendant VILLALVAZO's gunshot described herein, was not justified or lawful under the circumstances.

28.     Alternatively, or concurrently, Defendant VILLALVAZO and DOES' own excessive and unreasonable actions created a risk of harm to ISIAH, created the situation in which Defendant VILLALVAZO decided to use deadly force, and under the totality of circumstances caused an escalation of events leading to the shooting death of ISIAH.

29.     Alternatively, or concurrently, Defendant VILLALVAZO and DOES were integral participants in the use of deadly force, including the gunshot described herein, against ISIAH. Further, each of these Defendant Officers failed to intervene to stop, prevent, or report the use of excessive and unreasonable force and tactics by other officers.

30.     Defendant VILLALVAZO's and DOES' conduct herein, including but not limited to their decision(s) to stop and seize ISIAH, the manner in which they conducted that stop and seizure; Defendants' gun points at ISIAH; VILLALVAZO's use of deadly force; Defendants' failure to

provide care for the serious medical needs of their detainee; and their other conduct, was contrary to generally accepted reasonable police procedures and tactics, and caused the wrongful death of ISIAH.

31.    At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiff's and Decedent's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

32.    As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others:

    a.    Wrongful death of ISIAH MURRIETTA GOLDING;

    b.    Hospital and medical expenses (Survival claims);

    c.    Coroner's fees, funeral and burial expenses (Survival claims);

    d.    Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death and loss of familial association);

    e.    Pain and suffering, including emotional distress (Plaintiff ANTHONY GOLDING, based on individual § 1983 claim for loss of familial association);

    f.    ISIAH MURRIETTA GOLDING's loss of life, pursuant to federal civil rights law (Survival claims); and

    g.    ISIAH MURRIETTA GOLDING's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

    h.    Violation of constitutional rights;

    i.    All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**COUNT ONE**
**-- 42 U.S.C. § 1983 --**

**PLAINTIFFS AGAINST DEFENDANT VILLALVAZO, AND DOES 1–10**

33.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

34.     By the actions and omissions described above, Defendant VILLALVAZO and DOES 1-10 violated 42 U.S.C. § 1983, depriving decedent ISIAH MURRIETTA GOLDING of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution:

    a.  The right to be free from unreasonable searches and seizures, including unlawful detention and arrest, as secured by the Fourth Amendment;

    b.  The right to be free from excessive and unreasonable force, including deadly force, in the course of arrest or detention as secured by the Fourth Amendment;

    c.  The right to be free from unlawful, reckless, deliberately indifferent, and conscience shocking deadly force as secured by the Fourteenth Amendment (as the predicate for ANTHONY GOLDING's familial association claim, described in the next paragraph).

35.     By the actions and omissions described above, Defendant VILLALVAZO and DOES 1-10 violated 42 U.S.C. § 1983, depriving Plaintiff ANTHONY GOLDING of the following clearly-established and well-settled constitutional rights protected by the First and Fourteenth Amendments to the U.S. Constitution:

    a.  The right to be free from wrongful government interference with familial relationships, and Plaintiff's right to companionship, society and support of his son, ISIAH MURRIETTA GOLDING, as secured by the First and Fourteenth Amendments to the U.S. Constitution.

36.     Defendants subjected Plaintiff and Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of ISIAH MURRIETTA GOLDING, Deceased) and others would be violated by their acts and/or omissions.

37.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth at ¶ 32, above.

38.     The conduct of Defendant VILLALVAZO and DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Cal. Code of Civil Procedure § 377.20 et seq.

39.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and applicable California codes and laws.

**COUNT TWO**
**- 42 U.S.C. § 1983 –**
**PLAINTIFF AGAINST DEFENDANTS**
**CITY OF FRESNO, JERRY DYER, AND DOES 1-10**

40.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

41.     The unconstitutional actions and/or omissions of Defendant VILLALVAZO, and DOES 1-10, as well as other officers employed by or acting on behalf of Defendant CITY OF FRESNO, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the FPD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for CITY OF FRESNO and the FPD, including Chief of Police JERRY DYER:

    a.    To use or tolerate the use of unlawful deadly force including permitting and affirmatively training officers (i) to use deadly force when faced with less than an immediate threat of death or serious bodily injury; (ii) to use deadly force prematurely, or as a "first resort," or when facing a mere potential threat; and (iii) to use deadly force without giving a proper warning when one would be feasible;

    b.    To tolerate a pattern of deadly force by FPD officers based largely on officers' claims that the person they shot had reached for their waistband;

    c.    To cover-up violations of constitutional rights by any or all of the following:

      i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, officer-involved shootings, law enforcement related deaths, and unlawful seizures;

     ii. by failing to promptly, independently, thoroughly, and properly investigate and address officer involved shootings and other law enforcement related deaths;

    iii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

    iv. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

    d. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

    e. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 et seq.;

    f. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (e) above, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs to prevent recurring and foreseeable violations of rights of the type described herein.

42.    Defendants CITY OF FRESNO, DYER, and Does 1-10 failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant VILLALVAZO, and DOES 1-10, and other FPD personnel, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

43.    The unconstitutional actions and/or omissions of Defendants VILLALVAZO, DOES 1-10, and other FPD personnel, as described above, were approved, tolerated and/or ratified by policy-making officers for the FPD, including DYER. Plaintiff is informed and believes, and

thereupon alleges, the details of this incident have been revealed to the authorized policy makers within CITY OF FRESNO and the FPD, and that such policy makers have direct knowledge of the fact that the ISIAH MURRIETTA GOLDING shooting was not justified, but rather represented an unconstitutional use of unreasonable, excessive and deadly force. Notwithstanding this knowledge, the authorized policy makers within CITY OF FRESNO and the FPD have approved Defendant VILLALVAZO's shooting of ISIAH MURRIETTA GOLDING, and have made a deliberate choice to endorse Defendant VILLALVAZO's shooting of ISIAH MURRIETTA GOLDING and the basis for that shooting. By so doing, the authorized policy makers within CITY OF FRESNO and the FPD, and Chief DYER, have shown affirmative agreement with Defendant VILLALVAZO's actions, and have ratified the unconstitutional acts of Defendant VILLALVAZO.

44. The prior supervisory failures and deliberate indifference of DYER and DOES 1–10 were also a proximate cause of and moving force behind the violations of ISIAH MURRIETTA GOLDING's and Plaintiff's rights by Defendants VILLALVAZO and DOES 1–10. Defendants DYER and DOES 1–10 were responsible for creating, approving, and enforcing the unconstitutional customs and policies described in paragraph 41, above, that were a proximate cause and moving force of the individual Defendants' violations of rights and Plaintiff's and Decedent's injuries. DYER and DOES 1–10 were responsible to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VILLALVAZO and DOES 1–10, but due to their deliberate indifference to the substantial risk of harm to the public, including people situated like Plaintiff and Decedent, DYER and DOES 1–10 failed to reasonably, adequately, and appropriately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VILLALVAZO and DOES 1–10. DYER and DOES 1–10 ratified the Defendant officers' conduct and decisions in this matter as described in paragraph 43, above, after being fully informed of such

and the basis for them, and after viewing the videos of the shooting, thereby affirming Defendant officers' choices, unconstitutional decisions, and the bases for those unconstitutional decisions.

45.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants CITY OF FRESNO, DYER, and Does 1-10, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth in ¶¶ 34-35, above.

46.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff and decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

47.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants CITY OF FRESNO, DYER, and Does 1-10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees as set forth in ¶¶ 37-39, above, including punitive damages against Chief DYER.

**COUNT THREE**
**-- VIOLATION OF CIVIL CODE §52.1 --**
**PLAINTIFF AGAINST DEFENDANT VILLALVAZO AND CITY OF FRESNO**

48.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

49.     Plaintiff ANTHONY GOLDING brings this "Bane Act" claim individually for direct violation own rights (his familial association claim based on Defendants' intentional shooting of his son without a legitimate law enforcement purpose in a manner that shocks the conscience), and as a

survival claim pursuant to California Code of Civil Procedure § 377.20 *et seq.* for violation of ISIAH MURRIETTA GOLDING's and his own rights.

50.    By    his    conduct    described    herein,    Defendant    VILLALVAZO,    acting    in concert/conspiracy, as described above, violated Plaintiff's and Decedent's rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

   a. ISIAH MURRIETTA GOLDING's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and by Article I, § 13 of the California Constitution (Survival claim only of Plaintiff ANTHONY GOLDING);

   b. ISIAH MURRIETTA GOLDING's right to be free from excessive and unreasonable force in the course of arrest or detention, as secured by the Fourth Amendment to the United States Constitution and by Article 1, § 13 of the California Constitution (Survival claims only of Plaintiff ANTHONY GOLDING);

   c. ISIAH MURRIETTA GOLDING's right to be free from the unreasonable use of deadly force as secured by the Fourth Amendment to the United States Constitution and by Article 1, § 13 of the California Constitution (Survival claim of Plaintiff ANTHONY GOLDING);

   d. Plaintiff    ANTHONY    GOLDING's    and    ISIAH    MURRIETTA GOLDING's right to be free from wrongful government interference with familial    relationships,    and    Plaintiff's    and    Decedent's    right    to companionship and society with each other, as secured by the First and Fourteenth Amendments to the United States Constitution (Plaintiff ANTHONY GOLDING's individual and survival claims); and

   e. The right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43 (Plaintiff ANTHONY GOLDING's individual and survival claims).

51.    Unlawful deadly force which violates the Fourth Amendment violates the Bane Act.[2] Defendants' use of unlawful deadly force against ISIAH MURRIETTA GOLDING, in and of itself, satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act.

---

[2] *See Chaudhry v. City of Los Angeles,* 751 F.3d 1096, 1105 (9th Cir. May 19, 2014) (citing *Cameron v. Craig,* 713 F.3d 1012, 1022 (9th Cir. 2013)).

52. Further, any volitional, intentional violation of rights also satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act.[3]  All of Defendants' violations of duties and rights were volitional, intentional acts; none was accidental or merely negligent.

53. Alternatively, Defendants violated Plaintiff ANTHONY GOLDING's and ISIAH MURRIETTA GOLDING's rights by the following conduct constituting threat, intimidation, or coercion that was above and beyond any lawful seizure or use of force:

    a. Threatening ISIAH MURRIETTA GOLDING in the absence of any threat presented by ISIAH MURRIETTA GOLDING, or any justification whatsoever;

    b. Using deliberately reckless and provocative tactics to apprehend ISIAH MURRIETTA GOLDING in violation of generally accepted law enforcement training and standards, and in violation of ISIAH MURRIETTA GOLDING's rights;

    c. Defendant VILLALVAZO and DOES 1-10 pointing their guns at ISIAH MURRIETTA GOLDING in the absence of any threat or justification whatsoever;

    d. Threatening violence against ISIAH MURRIETTA GOLDING, with the apparent ability to carry out such threats, in violation of Civ. Code § 52.1(j);

    e. Using excessive, unreasonable and unjustified force against ISIAH MURRIETTA GOLDING by firing a gunshot at ISIAH MURRIETTA GOLDING, with specific intent to kill, in the absence of any immediate threat;

    f. Denying ISIAH MURRIETTA GOLDING prompt and necessary medical care after Defendant VILLALVAZO shot ISIAH MURRIETTA GOLDING while ISIAH MUIRRIETTA GOLDING was his arrestee, in desperate need of such care, and unable to provide or obtain such care for himself;

    g. Failing to intervene to stop, prevent, or report the unlawful seizure and use of excessive and unreasonable force by other officers;

    h. Creating, through their own excessive and unreasonable actions, a risk of harm to ISIAH MURRIETTA GOLDING, by Defendants VILLALVAZO and DOES 2-10s' decision to use deadly force, and officers' wrongful conduct causing an escalation of events that led to the shooting death of ISIAH MURRIETTA GOLDING;

    i. Violating Plaintiff ANTHONY GOLDING's and ISIAH MURRIETTA GOLDING's rights to familial association by their use of conscience-shocking

---

[3] *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766, 801-02 (2017).

COMPLAINT AND JURY DEMAND

excessive force and provocative tactics without any legitimate law enforcement purpose.

54.     Defendant CITY OF FRESNO is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

55.     As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (individually and as Successor in Interest) sustained injuries and damages, and against Defendant VILLALVAZO and CITY OF FRESNO is entitled to relief as set forth above at ¶¶ 35–38, including punitive damages against Defendant VILLALVAZO, and including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys fees, treble damages, and civil penalties.

**COUNT FOUR**
**-- NEGLIGENCE; PERSONAL INJURIES --**
**PLAINTIFFS AGAINST DEFENDANTS VILLALVAZO, DYER, DOES 1-10**
**AND CITY OF FRESNO**

56.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

57.     At all times, Defendant VILLALVAZO, and DOES 1-10 owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

58.     At all times, Defendant VILLALVAZO, DOES 1-10 owed Plaintiff the duty to act with reasonable care.

59.     These general duties of reasonable care and due care owed to Plaintiff by Defendants include but are not limited to the following specific obligations:

    a.     to refrain from using excessive and/or unreasonable force against ISIAH MURRIETTA GOLDING;

    b.     to refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

c.    to refrain from abusing their authority granted them by law;

d.    to refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

60.    Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendant DYER and Does 1-10, include but are not limited to the following specific obligations:

a.    to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.    to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiff's and Decedent's.

c.    to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth at paragraph 41, above.

61.    Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

62.    Defendant CITY OF FRESNO is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code section 815.2.

63.    As a direct and proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at ¶¶ 35–38, including punitive damages against Defendants VILLALVAZO, DOES 1-10, and DYER, in their individual capacities.

**COUNT FIVE**
**-- ASSAULT AND BATTERY --**
**PLAINTIFF AGAINST DEFENDANTS VILLALVAZO AND CITY OF FRESNO**

64.    Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

1

65.     The actions and omissions of Defendant VILLALVAZO as set forth above constitute

2

assault and battery.

3

66.     As a direct and proximate result of Defendants' assault and battery of ISIAH

4

MURRIETTA GOLDING, Plaintiff sustained injuries and damages, and is entitled to relief as set

5

forth above at ¶ 35-38, including punitive damages against Defendant VILLALVAZO.

6

WHEREFORE, Plaintiff respectfully requests the following relief:

7

8       a.      against each and every Defendant herein, jointly and severally, compensatory
                and exemplary damages in an amount according to proof and which is fair,
9               just and reasonable;

10      b.      against Defendants VILLALVAZO, DOES 1-10, and DYER, in their
                individual capacities, punitive damages under 42 U.S.C. § 1983 and
11              California law in an amount according to proof and which is fair, just, and
                reasonable;
12

13      c.      against each and every Defendant, jointly and severally, all other damages,
                penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983
14              and 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5,
                Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by
15              California and/or federal law;

16      d.      Injunctive relief, including but not limited to the following:
17
                    i.    an order prohibiting Defendants CITY OF FRESNO and its Police
18                        Chief from engaging in the unconstitutional customs, policies,
                          practices, procedures, training and supervision as may be determined
19                        and/or adjudged by this case;

20
                    ii.   an order requiring Defendant CITY OF FRESNO to institute and
21                        enforce appropriate and lawful policies and procedures for the use of
                          deadly force;
22

23                 iii.   an order prohibiting Defendants and their deputies and police officers
                          from engaging in the "code of silence" as may be supported by the
24                        evidence in this case;

25                 iv.    an order requiring Defendant CITY OF FRESNO to train all law
                          enforcement officers concerning generally accepted and proper tactics
26                        and procedures and this Court's orders concerning the issues raised in
                          injunctive relief requests i-iii, above;
27

28      e.      Declaratory relief; and

COMPLAINT AND JURY DEMAND                                                          20

f.      Such other and further relief as this Court may deem appropriate.

DATED: March 7, 2018                          STUART R. CHANDLER APC


                                             /s/ Stuart R. Chandler
                                             Stuart R. Chandler, Esq.
                                             Attorney for Plaintiff, ANTHONY GOLDING

1

2

**JURY DEMAND**

3

Plaintiff hereby requests a trial by jury.

4

DATED: March __, 2018                    STUART R. CHANDLER APC

5

6

_/s/ Stuart R. Chandler_____

7

Stuart R. Chandler, Esq.

Attorney for Plaintiff, ANTHONY GOLDING

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28